# Third District Court of Appeal

## State of Florida

Opinion filed August 13, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0618
Lower Tribunal No. 18-37602
_____


**Shakur Stevenson,**
Appellant,

vs.

**Sagiv Israeli, et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Charles Kenneth Johnson, Judge.

Kula & Associates, P.A., and Elliot B. Kula and William D. Mueller, for appellant.

Harris Lowry Manton LLP, and Caitlyn Clark and Stephen G. Lowry (Savannah, GA); Harris Appeals, P.A., and Andrew A. Harris and Grace Mackey Streicher (Palm Beach Gardens); Lewis Legal Group, P.A., and Jeannete C. Lewis (Davie); Eichen Crutchlow et al., and Barry Robert Eichen (Edison, NJ), for appellees.


Before FERNANDEZ, LOGUE and LINDSEY, JJ.

LOGUE, J.

The defendant below, Shakur Stevenson, appeals the trial court's order granting the plaintiffs below, Sagiv Israeli, Shayda Velasco, and Maria Paola Molina (collectively, "Plaintiffs"), a new trial based on comments made by defense counsel during closing argument. Although no objection was made to the comments at the time, we find no error in the trial court's conclusion that the comments impugned the credibility and integrity of the Plaintiffs' counsels and were therefore "improper, harmful, incurable, and so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial." Murphy v. Int'l Robotic Sys., Inc., 766 So. 2d 1010, 1031 (Fla. 2000).

## Background

In November 2018, the Plaintiffs filed an assault and battery action against Stevenson and David Lamont Grayton (collectively, "Defendants"). The complaint alleged that the Defendants, who are professional boxers, hit the Plaintiffs during a confrontation in a valet parking garage. The Plaintiffs sought both compensatory and punitive damages against the Defendants. Prior to trial, a default was entered against Grayton.

The case proceeded to a jury trial. The video of the fight was played several times during trial. As Grayton defaulted, all allegations against him

2

were deemed admitted. Stevenson, who claimed he was acting in self-defense, admitted he hit Israeli and broke his jaw and a bone near his eye. The jury learned that, prior to trial, Stevenson pled guilty to felony assault and battery as to Israeli, and guilty to misdemeanor assault and battery as to one of the two other Plaintiffs. At trial, the Plaintiffs were not seeking medical bills as Stevenson had already paid $60,000 in medical bills. The parties disputed the severity of Israeli's injuries, with each party introducing expert medical testimony to support their positions. In particular, Stevenson denied Israeli's claim of a moderate traumatic brain injury.

The jury returned a verdict finding Stevenson and Grayton were a legal cause of Israeli's injuries, awarding $60,000 in past damages but finding that Israeli did not sustain any future damages. This amount was substantially less than the millions of dollars sought by the Plaintiffs. The jury found that Stevenson and Grayton did not cause any damages to either Molina or Velasco. Further, the jury did not award punitive damages to any of the Plaintiffs.

The Plaintiffs moved for new trial based on alleged improper and inflammatory comments made by defense counsel during closing argument. The trial court granted the Plaintiffs' motion for new trial based on numerous statements made by the defense in opening and closing, but we focus only

3

on the following comments made during closing argument:

1.    "And just before that, they announced the fight, and lo and behold, coincidentally, guess who is walking into Dr. Suite's office to retain him? That is right, **Plaintiffs['] Counsel. She sees, guess what, the lottery has come in.**"

2.    "Lo and behold, just as he is coming into his prize fight, there is **Ms. Lewis [one of Plaintiffs' trial counsels] with Dr. Suite [one of Israeli's treating doctors].**"

3.    "Because you got to start pumping your numbers, you know what that is called, that is a lottery ticket. It has come in. [Plaintiffs' objection to the words "lottery ticket" was overruled]. It is now time for the celebrity shakedown. So, **Ms. Lewis runs over it. She hires doctors and they are commenting[.]**"

4.    "[N]obody knows you like yourself, oh, **and your lawyers. Okay, lawyers, his lawyers were involved. His lawyer help[ed] prepare this.** We are now on this side, September of 2021 standard interrogatories, . . . and he lied, he committed perjury. So, let us hold him to the same standard. He cared about perjury, he is committing perjury in this case."

5.    "Well, at least, he is truthful about that. **The other side is not truthful [sic] anything.**"

6.    "People lie through their teeth for $12 million, ladies and gentlemen. They will go out and **they will hire a bunch of Plaintiffs lawyers to come in here and lie to you** because they want $12 million. **We will pull out your battery of lawyers from across the nation because the lottery ticket has come in** and they want $12 million. Okay. . . . **Don't buy it. It is a celebrity shakedown.** I told you to keep getting the evidence in this case will show celebrity, a celebrity shakedown."[1]

---

[1] The bolding contained in the trial transcript excerpts in this opinion reflect the emphasis provided by the trial court in its order.

The trial court concluded that, "defense counsel's repeated comments attacking Plaintiffs' counsel[s] and, specifically, accusing them of lying constitute fundamental error pursuant to these standards." The trial court also determined that the "comments are individually improper and certainly require new trial when viewed cumulatively."

Stevenson's timely appeal followed.

## Analysis

Stevenson contends the trial court erred by granting the Plaintiffs' motion for new trial. We are not persuaded.

Generally, an order denying or granting a motion for new trial based on unobjected-to closing argument is reviewed for an abuse of discretion. See Fla. Peninsula Ins. Co. v. Nolasco, 318 So. 3d 584, 586 (Fla. 3d DCA 2021). Further, "[a] contemporaneous objection to improper comments during closing argument is necessary to preserve error, unless the error can be said to be fundamental." Id. (quoting Owens Corning Fiberglas Corp. v. Morse, 653 So. 2d 409, 410 (Fla. 3d DCA 1995)). "Fundamental error occurs if the argument 'was so prejudicial as to be incapable of cure by rebuke or retraction,' or if the error extinguishes 'a party's right to a fair trial.'" Id. at 586-87 (quoting Owens Corning, 653 So. 2d at 410 (citations omitted)); see also Wilczek v. Calafell, No. 3D23-1462, 2025 WL 1700473 (Fla. 3d DCA June

5

18, 2025) (applying standard set forth in <u>Florida Peninsula</u>). Thus, a trial court's determination that an unobjected-to error constitutes fundamental error is reviewed de novo. <u>See</u> <u>Parker v. State</u>, 399 So. 3d 1224, 1228 (Fla. 1st DCA 2025) ("Claims of fundamental error are also subject to de novo review.").

A party's closing argument that impugns the credibility or integrity of opposing counsel before the jury constitutes fundamental error as it deprives the party whose counsel was impugned from receiving a fair trial. <u>See</u> <u>Fla. Peninsula</u>, 318 So. 3d at 588 ("[D]erogatory comments specifically attacking the integrity of opposing counsel constitute fundamental error, depriving the plaintiffs of a fair trial." (quoting <u>Owens Corning</u>, 653 So. 2d at 411)). "This Court has repeatedly held that arguments claiming opposing counsel 'lied to the jury' or accusing counsel of 'trickery' and 'hiding the ball' are highly prejudicial and improper." <u>Id.</u> These types of comments "are of a nature and type that neither rebuke nor a retraction of the comments would destroy their prejudicial and sinister influence." <u>Id.</u> (internal quotation marks omitted).

Here, Stevenson recognizes that, generally, comments impugning opposing counsel rise to the level of fundamental error. However, he argues that the comments, when viewed in their full context, did not impugn Plaintiffs' counsels but were directed at the Plaintiffs themselves. A review

6

of the comments does not support Stevenson's argument.

First, Second, and Third Comments

The first and second comments pertain to Israeli seeing Dr. Suite at Plaintiffs' counsel's request, and the third comment relates to Dr. Suite then referring Israeli to other doctors. Defense counsel asserted that in October 2019, Stevenson had his first big prize fight that was being publicized by ESPN. It was then, the defense argued, that Israeli started to complain of more serious injuries as a result of his broken jaw and head injury. Defense counsel asserted that when Israeli was discharged from Jackson Memorial Hospital, his medical records reflect that he was doing well and was not complaining of pain.

Thereafter, defense counsel argued, Israeli perjured himself during his deposition because he testified that he was having some memory issues and occasional jaw pain. Defense counsel then made the first complained-of comment: "And just before that, they announced the fight, and lo and behold, coincidentally, guess who is walking into Dr. Suite's office to retain him? That is right, **Plaintiffs['] Counsel. She sees, guess what, the lottery has come in.**" Defense counsel then makes the second comment, "Lo and behold, just as he is coming into his prize fight, there is **Ms. Lewis over with Dr. Suite.**" Defense counsel immediately thereafter stated, "Remember, Dr. Suite. What

7

percentage of Dr. Suite[']s cases represent cases coming from Plaintiffs['] Counsel just like this, 80%. . . . And only four months have passed. And guess what, lo and behold, oh my god, he has got traumatic brain injury, post concussive, facial pain, muscles vestibule blah-blah-blah."

After this comment, defense counsel once again argued that when released from Jackson Memorial Hospital and during his follow up visits, Israeli did not complain of pain or memory loss, etc. Defense counsel then argues: "Because you got to start pumping your numbers, you know what that is called, that is a lottery ticket. It has come in. [Plaintiffs' objection to the words "lottery ticket" was overruled]. It is now time for the celebrity shakedown. So, **Ms. Lewis runs over it. She hires doctors and they are commenting.**"

Stevenson contends these statements impugn only Israeli – not his lawyers. It is true that these statements directly impugn Israeli by calling him a liar. The comments, however, also impugned the integrity of Plaintiffs' counsel, Ms. Lewis, by stating that she took Israeli to Dr. Suite's office because she saw that the "lottery has come in."

Fourth Comment

The fourth comment made by defense counsel was as follows:

[N]obody knows you like yourself, oh, **and your lawyers. Okay, lawyers, his lawyers were involved. His lawyer help[ed]**

8

**prepare this.** We are now on this side, September of 2021 standard interrogatories, . . . and he lied, he committed perjury. So, let us hold him to the same standard. He cared about perjury, he is committing perjury in this case.

Stevenson again contends that this statement does not impugn the integrity of Plaintiffs' counsels. Rather, he argues, it states only that Israeli perjured himself in his interrogatories. The statement that the "lawyers were involved," Stevenson suggests, should be interpreted as indicating that the lawyers were involved only in preparing the interrogatories and not in the claimed perjury. This argument might stand if the statement were taken in isolation. Taken in the context of this case, however, where defense counsel expressly accused the Plaintiffs' counsel of lying, we find no error in the trial court's understanding of this comment accusing both Israeli and his counsels of lying in the interrogatories.

<u>Fifth Comment</u>

Prior to making this argument, defense counsel argued that Stevenson's testimony reflected that he first lied to the police, but later took responsibility and pled guilty in criminal court. Defense counsel then argued, "Well, at least, he is truthful about that. **The other side is not truthful [sic] anything.**"

The reference to the "other side" taken in isolation may be unclear as to whether it is a reference to the opposing parties or to the opposing parties

9

and their lawyers. Taken in context of this trial, however, where elsewhere defense counsel accused the Plaintiffs' lawyers of lying, the trial court did not err in concluding defense counsel was referring to both the Plaintiffs and their counsels.

Sixth Comment

The sixth comment was the statement that most troubled the trial court:

People lie through their teeth for $12 million, ladies and gentlemen. They will go out and **they will hire a bunch of Plaintiffs lawyers to come in here and lie to you** because they want $12 million. **We will pull out your battery of lawyers from across the nation because the lottery ticket has come in** and they want $12 million. Okay. . . . **Don't buy it. It is a celebrity shakedown.** I told you to keep getting the evidence in this case will show celebrity, a celebrity shakedown.

In this comment, defense counsel argued that the Plaintiffs hired lawyers to come to trial court to lie for monetary gain. This is a textbook example of a comment that improperly impugns the integrity and credibility of the Plaintiffs' lawyers.

## Conclusion

A review of the comments reflects that they impugned the credibility and integrity of the Plaintiffs' counsels. We find no error in the trial court's determination that, taken cumulatively, the comments rose to the level of fundamental error and denied the Plaintiffs the right to a fair trial.

Affirmed.

10